# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PETER HOLYK, | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:17-0435 |
| v. | : | JUDGE MANNION |
| SCRANTON COUNSELING CENTER, | : | |
| | : | |
| Defendant | : | |
| | : | |

## MEMORANDUM

Pending before the court are two motions to dismiss the plaintiff's complaints[1]. (Doc. 8, Doc. 19). Based upon the court's review of the motions and related materials, the motions will be granted in part, denied in part, and dismissed as moot in part.

The defendant's motions to dismiss are brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged

---

[1]The plaintiff filed a complaint in the above-captioned matter, as well as a complaint in Civil Action No. 3:17-1091, which was consolidated into this action by order dated June 26, 2017. (Doc. 18).

in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. Id. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See* Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d

2

1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See* Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. *See*, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

The plaintiff alleges that he is an adult male with a birth date of October 17, 1952, who suffered from an arthritic hip which limited his mobility and caused chronic pain. As a result, the plaintiff underwent hip surgery in or around January 2016.

The plaintiff began working for the defendant in or around August 1977. He has over 30 years of experience in the area of intellectual disabilities and

was in the upper echelon in terms of manager salary level. At all relevant times, the plaintiff alleges that the defendant, his employer, was aware that he was having medical issues with his hip.

In or around February 2016, one of the supervisors working for the plaintiff, Alex Groysman, gave notice that he was resigning from his position. When he did so, he was told by Dr. Edward Heffron, the Executive Director, and/or Sal Santoli, the Chief Operating Officer, to "be patient" because the plaintiff was going to be "reassigned" and Mr. Groysman could be the next departmental director. Mr. Groysman declined the offer.

The plaintiff alleges that around this time, Mr. Heffron and Mr. Santoli began summoning him on a regular basis to make issues of things that had been accepted procedure for years, such as providing homeless shelter information when all other efforts for placement had failed. They then began to claim that past employees complained of "lack of training". According to the plaintiff's complaint, Mr. Heffron and Mr. Santoli began to mischaracterize events to make the plaintiff seem at fault and singled him out for the failure of the agency as a whole to have a policy for dealing with threats. The plaintiff alleges that such actions were meant to harass him into resigning or to replace him.

After Mr. Groysman's resignation, he and the plaintiff suggested that an

individual in their department be promoted to fill Mr. Groysman's supervisory position. In the past, it was the practice of the defendant to allow the plaintiff and the previous service director to select a replacement. However, senior management transferred Ellen Sechler, another individual from an entirely different department, into Mr. Groysman's vacant position. According to the plaintiff's complaint, Ms. Sechler "quickly fell into disfavor with the county administrator's office" and she was not as competent as the plaintiff, nor did she have the temperament to succeed. Although senior management received numerous complaints regarding Ms. Sechler, she did not receive any disciplinary action. Instead, the plaintiff was held responsible for Ms. Sechler's shortcomings which included, but was not limited to, deliberately misleading him regarding the completion of training for new employees.

The plaintiff alleges that it became evident to him that the defendant intended to remove him from his position in that he was demoted and the defendant began searching for his replacement. The plaintiff was dropped two supervisory levels with roughly a 10% reduction in salary. When the plaintiff was demoted, he alleges that he was assigned to a position that exposed him to potentially violent and aggressive individuals. The plaintiff believes that the defendant engaged in a concerted effort to damage his professional reputation and put him in a position that could result in an injury due to his

5

medical condition and age in an effort to force him to resign. The plaintiff alleges that the individual who received his position after his demotion was at least twenty years his junior and lacked his qualifications.

In light of the above allegations, the plaintiff sets forth four counts in his initial complaint: Count I, Age Discrimination in Employment Act, ("ADEA"); Count II, Americans with Disabilities Act, ("ADA"); Count III, Rehabilitation Act, ("Rehabilitation Act"); and Count IV, Pennsylvania Human Relations Act, ("PHRA").

In the subsequent complaint filed by the plaintiff and consolidated into the initial complaint, the plaintiff alleges that he filed an EEOC charge on or about March 16, 2016 relating to the allegations set forth in his initial complaint filed in this court. Thereafter, the plaintiff alleges that the defendant began moving to terminate him. Specifically, the plaintiff alleges that he received a verbal warning document which is the "first step" in progressive disciplinary action, as well as a copy of an email thread which accused him of insubordination. As to the email thread, the plaintiff believes that the defendant was deliberately creating bogus documentation via email to make it appear that the plaintiff was at fault for the actions of his supervisor. The plaintiff alleges that he felt it imperative that his version of the situation be documented in the email so that he could not be accused of agreeing with the

pretext.

Other items listed in the progressive disciplinary action, including missing funds and medications, are alleged to be the result of existing policies that were in effect prior to the plaintiff taking the job and happened numerous times before he assumed the position. The plaintiff believes that no disciplinary action was taken against other supervisory employees for similar items listed in the disciplinary action. According to the plaintiff's complaint, the progressive disciplinary action was taken in retaliation for his first charge of discrimination and had material adverse consequences affecting the terms, conditions, or privileges of his employment that caused objectively tangible harm.

In light of these allegations, the plaintiff's second complaint sets forth three counts of retaliation based on the ADEA, ADA, and the Rehabilitation Act.

In its initial motion to dismiss, the defendant argues that the plaintiff has not established a prima facie case of disability discrimination. However, the plaintiff is not required to establish his prima facie case on a Rule 12(b)(6) motion. The United States Court of Appeals for the Third Circuit recently clarified this point by stating that "a complaint need not establish a prima facie case in order to survive a motion to dismiss." Connelly v. Lane Const. Corp.,

809 F.3d 780, 788 (3d Cir. 2016). What the plaintiff must do is set forth sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of his claims.

With respect to the factual allegations of the plaintiff's initial complaint, the defendant argues that the plaintiff has failed to properly allege that he is disabled under the ADA or the Rehabilitation Act. In order to properly allege a violation of the ADA or the Rehabilitation Act[2], the plaintiff must present sufficient factual allegations that: (1) he has a disability; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he nonetheless suffered an adverse employment action as a result of discrimination. Donahue v. Consol. Rail Corp., 224 F.3d 226, 229 (3d Cir. 2000).

As to the first provision, the plaintiff properly alleges that he suffers from a "disability" where he sets forth sufficient factual allegations demonstrating that: (1) he has a physical or mental impairment which substantially limits one or more of his major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment. See 42 U.S.C. §12102(2); 29 U.S.C. §705(20)(B).

---

[2]The substantive standards for determining liability are the same whether suit is filed under the ADA or the Rehabilitation Act. McDonald v. Com. of Pa., 62 F.3d 92, 95 (3d Cir. 1995).

8

In this case, the defendant argues that the plaintiff has failed to provide sufficient factual allegations demonstrating that he was "substantially" limited in a major life activity and therefore that he was disabled. Upon review of the complaint, the plaintiff alleges that he suffered from arthritis in his hip. Clearly, arthritis is an impairment. However, simply because one has been diagnosed with an impairment does not mean that he is disabled. See Tice v. Centre Area Transp. Auth., 247 F.3d 506, 513 n.5 (3d Cir. 2001). The plaintiff must sufficiently allege that the impairment substantially limited a major life activity. "Major life activities" include caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Fiscus v. Wal-Mart Stores, Inc., 385 F.3d 378, 382-83 (3d Cir. 2004). Here, the plaintiff alleges that his hip arthritis limited his "mobility" and caused him chronic pain. The term "mobility" has been used in Rehabilitation Act cases to address the circumstances of individuals who are unable to walk or are wheelchair bound. See Reeves v. Johnson Controls World Servs., Inc., 140 F.3d 144, 150-51 (2d Cir. 1998). The plaintiff in this case has not alleged an inability to walk, nor has he provided any authority that "mobility" is cognizable as a "major life activity". See id.; Amorosi v. Molino, 2009 WL 737338, at * 5 (E.D.Pa. Mar. 19, 2009). In his opposing brief, the plaintiff appears to equate mobility with walking, but does not allege such in his complaint. In addition,

the plaintiff has provided no factual allegations as to the extent that his arthritis caused him limitation. Therefore, the plaintiff has failed to sufficiently allege that he was substantially limited in a major life activity. The defendant's motion to dismiss will be granted as to this argument, without prejudice, to allow the plaintiff to amend his claim to sufficiently allege the major life activity impacted by his hip arthritis, as well as the extent to which his arthritis caused limitation, if he can do so in good faith.

The defendant further argues that the plaintiff has not sufficiently alleged that his termination was the result of the defendant regarding him as having an alleged impairment.[3] To be "regarded as" disabled within the meaning of 42 U.S.C. § 12102(2)(C), an individual must establish that he or she was "subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. §12102(3)(A). Citing to <u>Palish v. K&K RX Servs., L.P.</u>, 2014 U.S. Dist. LEXIS 80606, at *25 (E.D.Pa. June 12, 2014), the plaintiff argues that it is sufficient

---

[3]The defendant also argues that the plaintiff has failed to make factual allegations to establish that the defendant relied upon a record of disability in making its decision to demote the plaintiff. In his opposing materials, the plaintiff indicates only that he has sufficiently pleaded that he was disabled or "regarded as" disabled by the defendant and does not rely upon the provision of having a record of impairment. Therefore, the court will not address the merits of this argument herein.

that he has alleged that the defendant knew he had medical issues related to his hip and had surgery and that it is no longer required that an employer believe a particular impairment is substantially limiting. However, courts in the Middle District have rejected such a lenient standard and have found that "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate . . . that the employer regarded the employee as disabled." See Canevari v. Itoh Denki U.S.A., Inc., 2017 WL 4080548 (M.D.Pa. July 24, 2017) (citations omitted). As such, the court finds that the plaintiff must allege more than that the defendant knew he had an impairment to be regarded as disabled. Given this, the court will grant the defendant's motion to dismiss as to this argument, without prejudice, to allow the plaintiff to amend his complaint to set forth sufficient factual allegations that the defendant regarded him as having an impairment that substantially limited one or more major life activities, if he can do so in good faith.

Basically for the same reasons argued above, the defendant also argues that the plaintiff has failed to sufficiently plead disability discrimination under the PHRA. The plaintiff has not addressed this claim in his opposing brief. The court will grant the defendant's motion to dismiss. However, dismissal will be without prejudice to allow the plaintiff to set forth sufficient factual allegations alleging a disability discrimination claim under the PHRA,

again if he can do so in good faith.

Next, the defendant argues that the plaintiff has failed to properly allege causation under the ADA in that he has failed to provide any factual allegations that could plausibly establish that he was demoted because of his disability. The plaintiff again responds that he need only allege that the defendant knew he had an impairment and, therefore, was not required to set forth any factual allegations with respect to causation. Despite liberalizing the ADA and expanding its scope through changes enacted as part of the ADA Amendments Act of 2008, ("ADAAA"), our courts have found that the law dictates that causation is "an integral part of the threshold finding that a plaintiff is regarded as having a disability." Id. See also Baughman v. Cheung Enters., LLC, 2014 WL 4437545, at *12 (M.D.Pa. Sept. 9, 2014). As such, a plaintiff must set forth factual allegations which show that his disability, or perceived disability, was a determinative factor in the adverse employment action taken against him. In this respect, the defendant's motion to dismiss will be granted, without prejudice, to allow the plaintiff to set forth sufficient factual allegations of causation as to his ADA, Rehabilitation Act, and PHRA claims.

As to the substantive claims, the defendant finally argues that the allegations of the plaintiff's complaint do not raise a plausible inference of age

discrimination. Where, as here, the plaintiff has not alleged direct evidence of purposeful discrimination and relies on indirect evidence to allege age discrimination, the complaint must allege facts that, if true, would establish the following elements: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position he held; (3) the plaintiff suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that could give rise to an inference of intentional discrimination. The defendant argues that the plaintiff's complaint fails as to the fourth element. To plausibly allege the fourth element, the complaint may either: (1) allege that "similarly situated employees who . . . were not members of the same protected class . . . were treated more favorably under similar circumstances" or (2) allege facts that "otherwise show [ ] a causal nexus between [the employee's] membership in a protected class and the adverse employment action." See Drummer v. Trustees of Univ. of Pennsylvania, 2017 WL 6336474, at *4 (E.D. Pa. Dec. 11, 2017). A plaintiff's bare assertion that he was replaced by a younger individual does not raise his claim above the level of mere speculation. Id. (citing Cauler v. Lehigh Valley Hosp., Inc., 654 Fed.Appx. 69, 72 (3d Cir.), *cert. denied*, ___ U.S. ___, 137 S.Ct. 480, 196 L.Ed.2d 385 (2016) ("we agree that the allegation in the complaint that a "substantially younger" person was hired does not give rise

to an inference of discrimination"). As the plaintiff in this case has only alleged that he was replaced by a substantially younger individual, the court will grant the defendant's motion to dismiss, without prejudice, to allow the plaintiff to provide sufficient factual allegations as to his age discrimination claims, if he can do so in good faith.

Finally, the defendant argues that certain requests for damages by the plaintiff are inappropriate and must be stricken. Specifically, the defendant argues that the plaintiff is barred from recovering punitive damages under the ADEA, the Rehabilitation Act or the PHRA and that the plaintiff is barred from recovering compensatory damages under the ADEA. In his response to the defendant's initial motion to dismiss, the plaintiff concedes that he is not entitled to such damages and cites to his pleadings seeking only those damages "as permitted by applicable law". To this extent, the defendants motion to dismiss will be dismissed as moot.

The defendant further argues that the plaintiff's request for punitive damages under the ADA should be dismissed. In seeking punitive damages under the ADA, the plaintiff must allege facts which indicate that the defendant engaged in discriminatory practices with "malice or reckless indifference." Montanez v. Missouri Basin Well Servs., 2015 WL 1608804 at *8 (M.D.Pa. Apr. 10, 2015)(citations omitted). Related to his ADA claim, the

plaintiff has alleged that, intending to either force him to resign or remove him from his position, the defendant assigned him to an area that exposed him to potentially violent and aggressive individuals. It is unclear at this stage of the proceedings whether the plaintiff can prove such claims. If he can, punitive damages may be warranted. Therefore, the court will deny the defendant's motion to dismiss pending further development of the record.

Finally as to damages, the defendant argues that the plaintiff has not properly alleged a right to recover compensatory damages under the Rehabilitation Act. Here, the defendant argues that the plaintiff must allege facts that demonstrate a showing of intentional discrimination and, at a minimum, that the defendant exhibited deliberate indifference to the underlying act of discrimination. Again, at this stage of the proceedings, the court will deny the defendant's motion to dismiss on this basis and will allow the plaintiff to proceed with his request for compensatory damages pending further development of the record.

In its second motion to dismiss, the defendant argues that the plaintiff has not alleged facts sufficient to show that he has a plausible claim for relief based on retaliation under the ADEA, the ADA, or the Rehabilitation Act. To state a claim of retaliation, the plaintiff must sufficiently allege: (1) he engaged in a protected activity; (2) he was subject to an adverse action; (3) there was

15

a causal connection between the protected activity and the adverse action. Cauler v. Lehigh Valley Hosp., Inc., supra (citing Fasold v. Justice, 409 F.3d 178, 188 (3d Cir.2005)).

The defendant here argues that the plaintiff has not alleged sufficient facts to show a "materially adverse" action. Specifically, the defendant argues that the plaintiff has alleged only that the defendant "began moving to terminate him" and that he received a "verbal warning document" which was the "first step" in progressive discipline, and a copy of an email thread accusing him of insubordination. The defendant argues that under Kasper v. Cty. of Bucks, 514 Fed.Appx. 210 (3d Cir. 2013), the Third Circuit held that a "Step 1" disciplinary warning was not a "materially adverse sanction". Id. at 213, 216-17.

The plaintiff argues that, viewed in context with the allegations set forth in his original complaint, he has sufficiently pleaded a materially adverse employment action. Specifically, in his first complaint, the plaintiff alleges that he was demoted to a position that would cause him to resign, a position which included a pay cut and which resulted in him being exposed to potentially violent and aggressive individuals. After refusing to resign and filing an EEOC complaint related to these matters, the plaintiff then alleges in his second complaint that the defendant began moving towards terminating him by

issuing him the warning document in accordance with the first step of the disciplinary process. The court agrees that, viewing the plaintiff's allegations as a whole, he has sufficiently alleged a material adverse employment action. Therefore, the defendant's motion to dismiss will be denied on this basis.

The defendant also argues that the plaintiff has not alleged sufficient facts to establish a causal relationship between the filing of his charge with the EEOC and the disciplinary warning, either through temporal proximity or a pattern of antagonism. Again, when considering the circumstances as a whole presented in both the first and second complaints, the court finds that the plaintiff has, at this stage of the proceedings, sufficiently alleged causation. Therefore, the defendant's second motion to dismiss will be denied on this basis.

With respect to damages, the defendant argues that compensatory and punitive damages are unavailable under the ADEA. In his opposing brief, the plaintiff concedes that neither compensatory nor punitive damages are available under the ADEA. Therefore, the defendant's motion to dismiss will be dismissed as moot as to this argument.

The defendant also argues that compensatory and punitive damages are not available under the ADA's anti-retaliation clause. While the plaintiff does not seem to challenge that punitive damages are unavailable under the

17

ADA's anti-retaliation clause, he does argue that compensatory damages are available. There is a split of authority on the issue of whether compensatory and punitive damages are available under the ADA's anti-retaliation clause. However, the court finds persuasive those decisions in the Middle District that have found that neither compensatory nor punitive damages are available under the ADA's anti-retaliation clause. See Wilkie v. Luzerne Cnty., 2014 WL 4977418 (M.D.Pa. Oct. 6, 2014); Baker v. PPL Corp., 2010 WL 419417, at *6 (M.D.Pa. Jan. 29, 2010). As such, the defendant's motion to dismiss will be granted on this basis.

An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: January 29, 2018**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2017 MEMORANDA\17-0435-01.wpd