**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PETER HOLYK,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:17-0435** |
| **v.** | : | **JUDGE MANNION** |
| **SCRANTON COUNSELING** | : | |
| **CENTER,** | | |
| | : | |
| **Defendant** | | |

**<u>MEMORANDUM</u>**

Pending before the court is the motion for summary judgment, pursuant to <u>Fed.R.Civ.P. 56</u>, filed by defendant Scranton Counseling Center ("SCC"), (Doc. 43), with respect to all of the claims against it in the amended complaint of plaintiff Peter Holyk. (Doc. 39). The plaintiff brings claims of disability discrimination and retaliation, which allegedly arose during his employment with the SCC, under the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Rehabilitation Act of 1973, and the Pennsylvania Human Relations Act. SCC contends that plaintiff failed to show that its proffered reasons for his suspension and demotion were a pretext for discrimination due to any disability. In the alternative, SCC seeks partial summary judgment regarding the plaintiff's retaliation claims. SCC contends that the court should enter judgment in its favor with respect to plaintiff's retaliation claims under the ADEA, ADA, Rehabilitation Act, and PHRA since plaintiff did not suffer an adverse employment action when he was only given a verbal warning based on his poor work performance as part of the first step

of a progressive disciplinary process. Based upon the court's review of the motion and related materials, SCC's motion for summary judgment will be **GRANTED** with respect to all of the plaintiff's claims.

## I.  MATERIAL FACTS[1]

The plaintiff is an adult male with a birth date of October 17, 1952. The plaintiff began working for SCC in August 1977. He has over 30 years of experience in the area of intellectual disabilities. Eventually, plaintiff became Director of Intellectual Disability and Early Intervention Services at SCC. As Director, plaintiff supervised staff and oversaw compliance with the state and county documentation requirements.

Dr. Edward Heffron is the President and Chief Executive Officer of SCC. Sal Santoli was the Chief Operating Officer of SCC until January of 2017, when he retired as COO and accepted a senior consultant position with SCC. Wendy Reed was Santoli's successor as COO and she served as Vice-President for Operations of SCC until the end of 2016.

Alex Groysman, one of the supervisors working for the plaintiff, gave notice in 2014 that he was resigning from his position. Heffron spoke to Groysman before he left SCC and told him SCC would like him to stay since he was a good worker with leadership potential and "that there could be at

---

[1]The material facts are derived from SCC's statement of facts, the plaintiff's response, and the exhibits filed by both parties. The court only includes facts material to the issues in the case, and it does not include legal conclusions.

some point down the line some change in [Director of ID Services]." Heffron did not recall specifically referencing the plaintiff in his conversation but he did not tell Groysman that plaintiff was going to reassigned. Groysman left SCC in March of 2015.

On October 12, 2015, plaintiff was demoted from Director to the position of Program Specialist. Plaintiff also received a 3-day suspension without pay. After he was demoted, plaintiff dropped two supervisory levels with a 10% reduction in salary. Specifically, plaintiff's salary was reduced from $70,000 to just under $63,000 when he was demoted.

Santoli issued a memorandum to plaintiff dated October 12, 2015 detailing the reasons for his demotion and it contained ten dated entries regarding his deficiencies. Plaintiff prepared a response to Santoli's memorandum and he refuted each entry claiming that he did nothing wrong with respect to each issue.[2]

The decision to demote plaintiff was made by Santoli and Heffron, and they claimed that plaintiff's demotion was due to numerous concerns over the years regarding problems with plaintiff's job performance.

Santoli testified that from the time be became COO in March of 2011, he received complaints from multiple staff at SCC that plaintiff was difficult to work with.

---

[2]Since Santoli's October 12, 2015 memorandum specifying the ten issues SCC had with plaintiff's performance and the plaintiff's response to the memo are submitted as exhibits, the details of these documents are not fully repeated herein. (Doc. 51-2, Exs.1 and 2).

Santoli and Heffron also testified about many shortcomings SCC found with respect to plaintiff's work as Director prior to his demotion. (Doc. 44-3, Doc. 44-2).

According to Santoli's memorandum, one reason for plaintiff's demotion was SCC's concerns about his performance which began in 2012 when the hospital system complained that he was unprofessional and abrasive after the mother of one of SCC's clients complained about him. Plaintiff was verbally counseled and he was removed from crisis services for two months.

Santoli's memorandum also detailed the following reasons for plaintiff's demotion:

In June 2013, another complaint about plaintiff was lodged this time by a counselor working for Community Medical Center and she claimed that he was abusive to her. After this complaint, plaintiff was permanently removed from crisis services.

On December 5, 2014, plaintiff sent an email to Santoli regarding potential threats from a client's parents toward a staff person but failed to take any further action to insure the staff person's safety.

On February 25, 2015, the County complained that plaintiff's staff were not making appropriate referrals for clients to have their needs addressed and were failing to follow through on the County's requests for referrals to the appropriate agencies.

On April 27, 2015, the Office of Developmental Programs ("ODP") informed SCC that a Corrective Action Plan with respect to the training of

plaintiff's staff remained incomplete and unacceptable. As a result, ODP ordered that plaintiff's staff could not perform services. Because of the incomplete Corrective Action Plan with ODP, ODP required proof that all service notes had been voided and no billing occurred. Santoli testified that plaintiff's failure to fulfill ODP's Corrective Action Plan resulted in a financial loss to SCC as well as a rebuke from the State Intellectual Disability Oversight Agency.

On May 15, 2015, plaintiff left for a dentist appointment when a member of his staff expressed suicidal thoughts.

On May 29, 2015, after a client of plaintiff's program stated that he had no place to stay for the weekend, plaintiff left work under the belief that it was acceptable for the individual to stay in a shelter. The County Program contacted Santoli and he made arrangements for the client to stay with a family member.

On June 18, 2015, Santoli was advised by ODP that plaintiff never completed ODP's April 2016 request for information about the Harry M. settlement, a major class action law suit involving the State with deaf individuals in programs.

On August 6, 2015, a client of plaintiff's program became homeless due to an eviction, but plaintiff made no effort to maintain the individual in his current housing. Rather, plaintiff advised the individual to stay in a shelter.

On September 2, 2015, plaintiff sent an email to the County, which is SCC's oversight agency and it major source of funding, questioning whether

the County has an accurate understanding of the ODP's regulations.

Additionally, the County MHMR, one of SCC's largest clients, withdrew its entire program from SCC in June or July 2016, which Santoli states was due, in part, to its dissatisfaction with plaintiff's poor performance and leadership with the program. SCC's loss of the County MHMR program resulted in loss of SCC's revenue,

Santoli and Heffron testified in their depositions that SCC demoted plaintiff to the position of Program Specialist and suspended him for three days on October 12, 2015, based on the above deficiencies they found in his performance as Director.

In his response to Santoli's October 12, 2015 memorandum and in his deposition, plaintiff addressed each deficiency and explained why he did not believe that he did anything wrong during his tenure as Director.

During his employment with SCC, plaintiff suffered from an arthritic hip which limited his mobility and caused chronic pain. Plaintiff testified that he had "a severe limp and limited mobility with [his] right hip, [i.e.] a pronounced limp." He also testified that SCC was "well aware" of his limp. Santoli stated in his deposition that he "may have" seen plaintiff limp but he thought nothing of it.

As a result of his hip problems, plaintiff had hip replacement surgery in January 2016. At all relevant times, the plaintiff states that SCC was aware that he was having medical issues with his hip. Plaintiff contends that when he was demoted, the Program Specialist position exposed him to potentially

6

violent and aggressive individuals, and that SCC deliberately put him in a position that could result in an injury due to his hip condition and age in an effort to force him to resign. However, SCC's evidence shows that at the time that plaintiff was demoted and suspended in October 2015, Santoli and Heffron testified that no one at SCC was aware of plaintiff's medical issues with his hip. Further, plaintiff admitted that he never told SCC's management that he believed his move to the Program Specialist position would cause him physical harm. Santoli and Heffron also testified that SCC did not become aware of plaintiff's issues with his hip until his surgery in January 2016.

Following his demotion, Joy DeRoberto became plaintiff's direct supervisor. DeRoberto was not involved in the decision to demote the plaintiff.

Plaintiff's duties as Program Specialist include responsibility for the overall day-to-day operations of a residential group home for clients, the supervision of about 12 staff members and their day-to-day operations of the home, scheduling for staff, attending meetings for clients, reviewing paperwork and completing reviews on clients residing in the home, and making sure that staff attend appointments with the clients who reside in the home.

On March 25, 2016, plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination by SCC. On September 2, 2016, Santoli responded to plaintiff's first EEOC charge. In his Affidavit responding to plaintiff's EEOC charge alleging disability discrimination, Santoli averred that he did not know that plaintiff had any

disability, and that plaintiff "never made any request for accommodations until after he had hip surgery in January 2016." Santoli also averred that before plaintiff's surgery, he was informed that plaintiff went to the gym and played racquet ball every day at lunch time.

The plaintiff filed a second EEOC charge against SCC on February 13, 2017, alleging retaliation.

On December 2, 2016, DeRoberto issued a verbal warning to the plaintiff during a meeting based on his insubordination. DeRoberto characterized the verbal warning she gave plaintiff as "discipline." After the warning, DeRoberto met with Santoli regarding all of the plaintiff's deficiencies in his job performance since October 12, 2015, and Santoli directed her to issue a memorandum. DeRoberto testified that she told Santoli about the basis for the plaintiff's alleged insubordination before he directed her to write the memo.

Thus, on December 2, 2016, DeRoberto issued plaintiff a memorandum memorializing the deficiencies she stated in her verbal warning to him. The five deficiencies noted by DeRoberto were as follows:

> Failed to file an Incident Report into the HCIS System. You were insubordinate to your supervisor, Joy DeRoberto when she brought to your attention your deficiency with the HCIS system. Failed to adequately and properly secure dangerous chemicals. Failed to adequately and properly monitor and account for patent money. Failed to adequately and properly account for patient medication.

> At the time of her deposition, DeRoberto could not remember the

underlying facts of plaintiff's alleged insubordination other than her recollection that plaintiff was argumentative. Nor could DeRoberto remember the detailed facts regarding the four other deficiencies of the plaintiff she referenced in her December 2, 2016 memorandum.

Plaintiff submitted evidence refuting the five issues regarding his performance upon which DeRoberto based her December 2, 2016 memorandum.

When DeRoberto issued plaintiff the verbal warning, she did not know that he had filed a discrimination charge with the EEOC in March of 2016. However, Santoli was aware of plaintiff's discrimination charge with the EEOC at the time of DeRoberto's memorandum.

In his deposition, plaintiff explained that he was not insubordinate and that he had sent DeRoberto an email regarding the deficiencies in the HCIS system. He also indicated in the email that there were corrections that needed to be made to entries that DeRoberto put in and, that she failed to properly enter. As such, plaintiff stated that he simply pointed out that problems DeRoberto found with the HCIS reports and the ones that required correction were her entries.

Plaintiff is currently age 66 and is still employed by the SCC as a Program Specialist.

## II.    PROCEDURAL BACKGROUND

In his amended complaint, (Doc. 39), the plaintiff asserts four counts,

namely: Count I, a retaliation claim under Age Discrimination in Employment Act, ("ADEA")[3], 29 U.S.C. §621, *et seq*.; Count II, disability discrimination and retaliation under the Americans with Disabilities Act, ("ADA"), 42 U.S.C. §12131, *et seq*.; Count III, disability discrimination and retaliation under the Rehabilitation Act of 1973[4], ("RA"), 29 U.S.C. §794; and Count IV, disability discrimination and retaliation under the Pennsylvania Human Relations Act, ("PHRA"), 43 P.S. §951, *et seq*. Plaintiff alleges that SCC violated the federal and state law by engaging in disability discrimination. Plaintiff also raises retaliation claims against SCC under the ADEA, the ADA, the RA, and the PHRA.

On March 29, 2018, SCC filed a motion for summary judgment regarding all of plaintiff's claims in his amended complaint, or, in the alternative, partial summary judgment with respect to his retaliation claims, pursuant to Fed.R.Civ.P. 56. (Doc. 43). SCC simultaneously filed its

---

[3]The court dismissed without prejudice plaintiff's age discrimination claim under ADEA he raised in his original complaint, (Doc. 33), and plaintiff did not re-assert this claim in his amended complaint.

[4]The substantive standards for determining liability regarding retaliation and discrimination claims are the same whether suit is filed under the ADA or the RA. McDonald v. Com. of Pa., 62 F.3d 92, 95 (3d Cir. 1995). Further, ADEA and PHRA claims are analyzed under the same standard, *see* Colwell v. Rite Aid Corp., 602 F.3d 495, 500 n.3 (3d Cir. 2010), and the "analysis of an ADA claim applies equally to a PHRA claim." Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999) (citing Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996)). As such, the court will discuss the plaintiff's retaliation claims under the ADEA, the ADA, the RA, and the PHRA together. The court will also discuss the plaintiff's disability discrimination claims under the ADA, RA and PHRA together.

statement of material facts with exhibits, (Doc. 44), and its brief in support, (Doc. 45). After being granted an extension, plaintiff filed his responses to SCC's statement of material facts with exhibits on May 4, 2018, and his brief in opposition. (Doc. 51). SCC filed a reply brief on May 18, 2018. (Doc. 52).

This court's jurisdiction over the plaintiff's federal claims is based on 28 U.S.C. §1331. The court can exercise supplemental jurisdiction over plaintiff's state law PHRA claims under 28 U.S.C. §1337.

## III.   DISCUSSION[5]

### A.   *Legal Standard for Plaintiff's Claims*

The burden-shifting framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies to the plaintiff's retaliation and discrimination claims under the ADEA, ADA, PHRA, and RA. *See* Gavurnik v. Home Properties, L.P., 227 F.Supp.3d 410, 416 (E.D.Pa. 2017), aff'd. 712 Fed.Appx. 170 (3d Cir. 2017); Williams v. Phil. Hous. Auth. Police Dept. 380 F.3d 751, 760 (3d Cir. 2004) (citation omitted); Wells v. Retinovitreous Associates, Ltd., 702 Fed.Appx. 33, 35 (3d Cir. 2017).

The court in Decker v. Alliant Technologies, LLC, 871 F.Supp.2d 413, 425 (E.D.Pa. 2012), explained the *McDonnell Douglas* burden-shifting

---

[5]Since the proper standard regarding a summary judgment motion under Fed. R. Civ. P. 56(c) are stated in the briefs of the parties, the court does not repeat it herein. *See also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990).

framework as follows:

> If the plaintiff establishes a prima facie case of [retaliation or] discrimination, then an inference of discriminatory motive arises and the burden shifts to the employer to articulate a legitimate, [nonretaliatory] nondiscriminatory reason for the adverse employment action. *See* Salley v. Circuit City Stores, Inc., 160 F.3d 977, 981 (3d Cir. 1998). If the employer does so, then the burden shifts back to the plaintiff to show that the employer's proffered reason is merely pretext for intentional discrimination. Makky, 541 F.3d at 214. The "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *See* Williams v. Phila. Housing Auth. Police Dep't, 380 F.3d 751, 759 n. 3 (3d Cir. 2004) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

"The burden to establish a prima facie case is a not an onerous one, but a prima facie case can allow a court 'to eliminate the most obvious, lawful reasons for the defendant's action.'" Id. (citing Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 352 (3d Cir. 1999).

### B. Retaliation Claims

In Counts 1-4, plaintiff alleges retaliation by SCC in violation of the, ADEA, the AD, the RA, and the PHRA. Plaintiff alleges that SCC retaliated against him after he filed his initial EEOC charge on March 25, 2016 alleging disability discrimination, and he claims that SCC had DeRoberto discipline him after his complaint. Plaintiff alleges that the disciplinary action was taken in retaliation for his first charge of discrimination with the EEOC and that it had material adverse consequences affecting the terms, conditions, or privileges of his employment that caused him harm.

Under the stated laws, employers are prohibited from retaliating against

their employees for engaging in protected activity such as filing a complaint with the EEOC. Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 188 (3d Cir. 2010); Gavurnik, 227 F.Supp.3d at 420 ("Protected activities under the ADEA include 'formal charges of discrimination as well as informal protests of discriminatory employment practices.'") (citation omitted); Macknet v. University of Pennsylvania, 738 Fed.Appx. 52 (3d Cir. 2018) (there was no dispute by parties that plaintiff's EEOC charge constituted a protected activity).

"To establish a prima facie case of unlawful retaliation in violation of the ADA [the ADEA, the RA and the PHRA], a plaintiff must show that he engaged in protected activity, that he suffered adverse action either after or contemporaneous with the protected activity, and that there was a causal connection between the employee's protected activity and the employer's adverse action." Canevari v. Itoh Denki U.S.A., Inc., (M.D.Pa. July 24, 2017) 2017 WL 4080548, *13 (citations omitted), adopted by 2017 WL 4077394 (M.D.Pa. Sep. 14, 2017); Gavurnik, 227 F.Supp.3d at 420.

SCC argues that plaintiff has failed to show that it took an adverse action against him after he filed his first EEOC charge in March of 2016 alleging discrimination. It states that plaintiff was only issued a verbal warning by DeRoberto in December of 2016, and that this was the only disciplinary action he received after his EEOC complaint. SCC points out that the Third Circuit has held that "a verbal warning is insufficient to establish an 'adverse employment action.'" SCC cites to the following cases for support:

> Deans v. Kennedy House, Inc., 587 F. App'x 731, 734 (3d Cir. 2014)(holding that the plaintiff did not suffer an adverse employment action when the defendants gave him oral and written warnings and docked his pay by fifteen minutes); *see also* Sconfienza v. Verizon Pennsylvania Inc., 307 F. App'x 619, 621-22 (3d Cir. 2008) (granting summary judgment on retaliation claim where plaintiff was only given a warning); and see also Kasper v. Cty. of Bucks, 514 F. App'x 210, 216 (3d Cir. 2013) (granting motion to dismiss where a "step 1" disciplinary warning was the only allegation of a negative employment action).

*See also* Mieczkowski v. York City School District, 414 Fed.Appx. 441, 446-47 (3d Cir. 2011) (the Third Circuit specifically recognized that written letters of reprimand that "do not effect a material change in the terms or conditions" of one's employment cannot constitute adverse employment actions.).

In support of its contention that plaintiff did not suffer an adverse employment action, SCC also states that there is no dispute that plaintiff remained employed by SCC in the same position after the warning, and that he has not presented any evidence that the verbal warning deprived him of any opportunities, benefits, or pay.

In Wells, 702 Fed.Appx. at 36 n. 14, the Third Circuit noted that the correct standard in identifying an adverse employment action regarding a retaliation claim is "the less restrictive [Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S.Ct. 2405 (2006)] standard, under which 'a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Thus, plaintiff points out that he does not have to "establish

14

that the action adversely affected the terms and conditions of his employment." Plaintiff presented evidence that DeRoberto followed up her verbal admonition of him with a memorandum on December 2, 2016, and that she considered it disciplinary in nature. DeRoberto stated that after the warning she discussed with Santoli all of the plaintiff's problems with his job performance and Santoli told her to issue the memorandum. Further, all of the deficiencies stated in DeRoberto's memorandum pertained to plaintiff's job duties. As such, plaintiff states, without any citation for support, that "[t]he issuance of a written disciplinary memorandum to an employee [ ] could certainly be deemed serious enough to dissuade a reasonable employee from making a charge of discrimination."

In applying the less restrictive *Burlington* standard to the facts of this case as required, the court does not find that plaintiff has sufficiently shown an adverse employment action with respect to his retaliation claims. In Clark v. Philadelphia Housing Authority, 701 Fed.Appx. 113, 117 (3d Cir. 2017), the Third Circuit indicated that in Burlington N. & Santa Fe Ry. Co., *supra*, the Supreme Court held that "written reprimands did not constitute adverse employment action sufficient to support a retaliation claim." The Third Circuit then found that plaintiff's retaliation claim failed since she "failed to allege any facts that suggest that [the unfavorable statement] in her performance review somehow adversely affected the terms or conditions of her employment." Id. *See also* Conway v. Celtic Healthcare of NEPA, Inc., 2018 WL 3727265 (M.D.Pa. Aug. 6, 2018) (This court found that the defendants' issuance of a

written warning was "insufficient to constitute an adverse employment action for purposes of the plaintiff's ADA and PHRA discrimination and retaliation claims.").

Similar to Clark, 701 Fed.Appx. at 117, the written reprimand plaintiff received in the form of DeRoberto's December 2, 2016 memorandum did not constitute an adverse employment action sufficient to support his retaliation claims because he failed to show that this memorandum "somehow adversely affected the terms or conditions of h[is] employment" with SCC. Additionally, the record shows that plaintiff himself was not dissuaded by the December 2, 2016 verbal warning and memorandum from making a subsequent charge against SCC with the EEOC. As stated, the plaintiff filed a second complaint against SCC with the EEOC on February 13, 2017, after DeRoberto's December 2, 2016 memorandum, raising his retaliation charge.

Therefore, the court will grant SCC's motion for summary judgment with respect to plaintiff's retaliation claims under the ADEA, ADA, RA, and PHRA.[6]

### C. *Disability Discrimination Claims*

Plaintiff claims that SCC violated the ADA and the RA since he was demoted and suspended due to an actual impairment, namely his hip condition. Section 504 and ADA claims are subject to the same analysis and thus may be addressed at the same time. *See* Weidow v. Scranton Sch. Dist.,

---

[6]Based on the court's finding that the plaintiff has failed to establish an adverse employment action with respect to his retaliation claims, the court declines to address the alternate bases for SCC's motion for summary judgment with respect to these claims. *See Conway, supra*.

460 Fed.Appx. 181, 184 (3d Cir. 2012) ("Because Congress has directed [that the ADA] be interpreted in a manner consistent with [the Rehabilitation Act], we will consider [Plaintiff's] claims under those statutes together.") (citation and internal quotation marks omitted).

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §12112(a). To establish a prima facie case of disability discrimination under the statute, the plaintiff must show: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." Taylor v. Phoenixville School Dist., 184 F.3d 296, 306 (3d Cir. 1999) (citing Gaul v. Lucent Technologies, 134 F.3d 576, 580 (3d Cir. 1998)). The ADA defines a "disability" with respect to an individual as: "(a) a physical or mental impairment that substantially limits one or more major life activities of such individual; (b) a record of such impairment; or (c) being regarded as having such an impairment." 42 U.S.C. §12102(1).

Thus, to establish a "disability" under the ADA, plaintiff must prove that he is substantially limited in performing a major life activity. *See* 42 U.S.C. §12102. The ADA Amendments Act of 2008 ("ADAAA") expanded the scope of disability and construed the definition of disability in favor of broad

coverage. Nonetheless, the ADAAA's definition of "disability" still remains as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. §12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. §12102(2)(A). Further, with respect to the "'physical or mental impairment' prong of the definition of a disability, EEOC regulations clarified that 'the determination of whether an impairment substantially limits a major life activity requires an individualized assessment' and 'should require a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior to the ADAAA." Riley v. St. Mary Medical Center, 2014 WL 220734729, *2 (E.D.Pa. May 28, 2014) (citations omitted). However, "[n]ot every impairment will constitute a disability" within the meaning of the ADA. Koller v. Riley Riper Hollin & Colagreco, 850 F.Supp. 2d 502, 513 (E.D.Pa. 2012). Under the ADAAA, the qualifying impairment must still create an "important" limitation. Id.

Here, the plaintiff's claim of disability discrimination in his amended complaint is based only on an actual disability.[7] SCC argues that the plaintiff

---

[7]On January 29, 2018, the court granted SCC's motion to dismiss plaintiff's "regarded-as" disability claim under the ADA raised in his original complaint and dismissed this claim without prejudice. However, since the plaintiff did not re-assert this claim in his amended complaint, (*see* Doc. 39, ¶62), and did not request an extension of time to do so, the time to amend his

18

has failed to produce sufficient evidence to establish that his medical issues with his hip substantially limit a major life activity. Although plaintiff testified that he has a limp, SCC contends that this is insufficient to show that he had a disability since he had failed to produce any evidence that his hip condition substantially limited a major life function.

The plaintiff testified that he walked with "a severe limp and limited mobility with [his] right hip– a pronounced limp." He testified that SCC was well aware of his limp. Santoli testified that while he may have seen plaintiff limp, he was not aware of plaintiff's hip condition until his replacement surgery in January 2016. Further, although plaintiff stated that his program specialist position "involves spending a lot of time around [people] capable of physically acting out . . . [and that his] employers were well aware that [he] had a severe limp and limited mobility with [his] right hip", he never told SCC that he felt endangered when he was demoted to the position due to his hip condition. Significantly, plaintiff at age 66 still remains at the present time in this position.

In light of the broad coverage the ADAAA provides, the court finds that plaintiff has produced sufficient evidence that he had a disability at the time

_____

ADA claim a second time to include the "regarded-as" prong of the definition of a disability has long passed. To the extent plaintiff attempts to add a "regarded as disabled" claim under the ADA in his brief in opposition,"[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Heim v. York Cnty. Prison,* 3:CV-10-1369, 2013 WL 1414638 (M.D. Pa. Apr. 8, 2013)(citing *Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.,* 836 F.2d 173, 181 (3d Cir.1988)).The court has thus not considered these additional allegations.

of his suspension and demotion and that his hip condition substantially limited a major life function. Plaintiff testified that he had a specific limitation regarding his hip condition and he identified the life activities it impacted, i.e., his sever limp when he walked and his limited mobility.

There is no question that plaintiff's demotion was an adverse employment action with respect to his ADA claim. Based on the facts discussed above, the court finds that plaintiff has established a prima facie case of disability discrimination under the ADA and the RA.[8] It is undisputed that the plaintiff has no direct evidence of discrimination. Thus, the burden shifts to SCC to articulate a legitimate, nondiscriminatory reason for the plaintiff's demotion and suspension.

No doubt that pretext cases under the ADA use the familiar *McDonnell Douglas* burden-shifting framework. *See* Willis v. Norristown  Area School Dist., 2 F.Supp.3d 597, 604 (E.D.Pa. 2014).

---

[8]The court notes that the Pennsylvania legislature has failed to enact a an amendment similar to the ADAAA's relaxed standard for disability. Rubano v. Farrell Area School Dist., 991 F.Supp.2d 678, 689 n. 7 (W.D.Pa. 2014) (citing Szarawara v. Cnty. of Montgomery, 2013 WL 3230691, at *2 (E.D.Pa. June 27, 2013) (holding that the PHRA has not been amended like the ADAAA to relax the standard for disability, and therefore, it was necessary to analyze plaintiff's ADA and PHRA claims separately)). Thus, the court must apply the pre-ADAAA disability standard for plaintiff's PHRA claim. Under this standard, the court finds that plaintiff's scant evidence, discussed above, regarding how his hip condition substantially limited a major life activity is insufficient as a matter of law to proceed with his disability claim under the PHRA. Regardless, as discussed below, even if plaintiff's evidence is sufficient to establish he had a disability under the PHRA, he failed to show that discrimination on the basis of his hip disability was SCC's real reason for his demotion and suspension.

The court finds that SCC has met its burden and presented an abundance of evidence showing that it had ten legitimate, nondiscriminatory reasons to demote and suspend plaintiff as specified in Santoli's October 12, 2015 memorandum. *See* Andersen, 118 F.Supp. 3d at 747 ("In a discrimination case, the issue before the court is not the fairness of an employer's decision to terminate the plaintiff, but whether the record raises an issue of fact as to whether the decision was motivated by discriminatory animus.") (citation omitted). In short, the evidence shows that SCC was dissatisfied with plaintiff's job performance as Director and that the problems with plaintiff's performance occurred over an extended period of time.

As such, the burden is now on the plaintiff to prove that SCC's proffered reasons for suspending and demoting him were pretextual. Plaintiff argues that SCC's reasons for suspending and demoting him were a pretext for discrimination based on his disability.

The Third Circuit in Smith, 589 F.3d at 689, stated that after the plaintiff satisfies the prima facie elements,

> the burden of production shifts to the employer to identify a legitimate nondiscriminatory reason for the adverse employment action. If the employer does so, the burden of production returns to the plaintiff to demonstrate that the employer's proffered rationale was a pretext for age discrimination. At all times, however, the burden of persuasion rests with the plaintiff.

Thus, since SCC has identified many legitimate non-discriminatory reasons for suspending and demoting the plaintiff, the plaintiff must now prove pretext by either discrediting its proffered reasons for the employment

actions or showing that disability discrimination was more likely than not the "but for" cause of the actions.

In order to show pretext, "the employee must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a . . . determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). In order to "discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent." Id. at 765. Moreover, "[t]he fact that an employee disagrees with an employer's evaluation of her does not prove pretext." Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d Cir. 1991), *overruled in part on other grounds*, St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993). "Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.' [Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1992)], and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.' Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 638 (3d Cir. 1993)." Id.

The plaintiff contends that he has established SCC's reasons for his suspension and demotion were pretextual largely based on his point-by-point explanation he provided in which he refuted those reasons upon which Santoli and Heffron relied to suspend and demote him. Plaintiff's evidence merely attempts to show that SCC's decision was incorrect based on his explanations that none of the deficiencies were his fault. However, plaintiff has failed to produce evidence that a discriminatory animus motivated Santoli and Heffron. There is a complete absence of evidence in this case showing that Santoli and Heffron were motivated to suspend and demote plaintiff due to his medical issues with his hip. In fact, when plaintiff was suspended and demoted, nobody at SCC was aware of his hip condition and his medical issues pertaining to his hip.

Thus, plaintiff has failed to present evidence to prove that SCC's proffered reasons for suspending and demoting him are merely a pretext for intentional discrimination with respect to his ADA and RA disparate treatment claims. Plaintiff has failed to offer sufficient evidence from which a fact finder could reasonably conclude that the adverse employment decisions taken against him by SCC were a result of discrimination due to his hip disability, i.e., he failed to present sufficient evidence to show that his disability was a determinative factor in SCC's decision to suspend and demote him.

Therefore, the court finds that the plaintiff's evidence fails to create a genuine issue of material fact to show that SCC's nondiscriminatory

numerous reasons for his suspension and demotion were pretextual. No reasonable jury could find that the detailed reasons for plaintiff's suspension and demotion "were a fabrication or that discrimination [due to his hip disability] was more likely than not the motivating or determinative cause of plaintiff's [demotion]." Willis, 2 F.Supp.3d at 606.

Since plaintiff's evidence is insufficient to show disability discrimination by SCC under the ADA, the court will grant SCC's summary judgment motion with respect to this claim. Since the same standard applies to plaintiff's disability discrimination claims under the RA and, the PHRA with respect to a pretext case, SCC is also entitled to summary judgment on these claims as well. Id. at 604 n. 10.


## IV.    CONCLUSION

Based on the foregoing reasons, the court will **GRANT** SCC's motion for summary judgment with respect to plaintiff's retaliation claims under the ADEA, ADA, RA, and PHRA. Further, since the plaintiff has not demonstrated that SCC's legitimate, non-discriminatory reasons for his suspension and demotion were pretextual, SCC's summary judgment motion will be **GRANTED** as to the plaintiff's disability discrimination claims under the ADA, the RA, and the PHRA. An appropriate order shall issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: December 13, 2018**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2017 MEMORANDA\17-0435-02.wpd